# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| QUINTEZ TALLEY | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| PA DEPARTMENT OF CORRECTIONS, | ; | |
| JOHN E. WETZEL, R. DOYLE, R. | : | |
| LADONNE, CYNTHIA LINK, LAURA | : | |
| BANTA, GENA CLARK, LT. A. REBER, | : | |
| LT. HARVEY, LT. BRIGHT, M. NASH, RN | ; | |
| CHRIS, RN CRYSTAL, UNKNOWN | : | |
| EXTRACTION TEAM # 1, UNKNOWN | : | |
| EXTRACTION TEAM # 2, UNKNOWN | : | |
| SHIFT COMMANDERS and RN S MARK | : | NO. 19-1687 |

## MEMORANDUM OPINION

**Savage, J.**                                                                                       **November 14, 2019**

Plaintiff Quintez Talley, a prisoner proceeding *pro se* and *in forma pauperis*, filed this civil action asserting claims under the Americans with Disabilities Act (ADA), the Rehabilitation Act (RA) and 42 U.S.C. § 1983.[1] He also brings state law claims and requests injunctive and declaratory relief. He has sued the Pennsylvania Department of Corrections (DOC) and several of its officers and employees.[2]

---

[1] May 29, 2019 Order (ECF No. 5). This is the most recent of 14 civil actions Talley has filed in this district since 2018 against Department of Corrections (DOC) personnel and others working at DOC prisons.

[2] Compl. ¶¶ 11-15 (ECF No. 2). Talley also sues R. Doyle, RN Chris, RN Crystal, Unknown Extraction Teams #1 and #2, and Unknown Shift Commander(s). These defendants did not file motions to dismiss. Nonetheless, a court may, on its own initiative, dismiss claims as to non-moving defendants if the claims against the non-moving defendants suffer from the same defects raised in the moving parties' motions. *Minn. Lawyers Mut. Ins. Co. v. Ahrens*, 432 F. App'x 143, 148 (3d Cir. 2011) (quoting *Bryson v. Brand Insulations, Inc.*, 621 F.2d 556, 559 (3d Cir. 1980) (stating that the court may *sua sponte* dismiss a claim as to non-moving defendants where the inadequacy of the claim is clear)). A claim against a non-moving party may be dismissed if the claims against all defendants are "integrally related" or where the non-moving defendants are in a similar position to the moving defendants. *Bonny v. Soc'y of Lloyd's*, 3 F.3d 156, 162 (7th Cir. 1993). Therefore, to the extent the deficiencies cited in the motion to dismiss also apply to these defendants, we consider them.

1

Defendants have moved to dismiss for failure to exhaust administrative remedies as required by the Prison Litigation Reform Act (PLRA) and failure to state a claim.[3] They also assert sovereign immunity as to the state claims. Because Talley fails to state any claims, we shall grant the motion and dismiss the complaint.

## Background[4]

On January 16, 2018, Talley was housed in a Psychiatric Observation Cell (POC) on suicide watch at the DOC's State Correctional Institution (SCI) at Graterford.[5] He informed Lieutenant Harvey Leonard that he was suicidal.[6] Leonard told Psychological Services Specialist Robert Ladonne what Talley had said and brought him to Talley's POC, where they watched Talley swallow a plastic spoon.[7] Ladonne told Talley that under no circumstances would he or Doyle sign Talley into the Mental Health Unit (MHU) and walked away.[8] Talley continued swallowing unidentified foreign objects.[9] Leonard

---

[3] Defendants filed their motion to dismiss on July 29, 2019. Defs.' Mot. to Dism. (ECF No. 12). On August 16, 2019, Talley moved for an extension of time to respond. Pl.'s Mot. for Ext. of Time (ECF No. 15). On August 20, 2019, we granted Talley an extension of time through August 26, 2019. August 20, 2019 Order (ECF No. 16). Although Talley has since filed other documents, he has not filed a response to the motion. Because Talley has not filed a response to either of Defendants' motions, we could have granted them as uncontested under Local Rule of Civil Procedure 7.1(c). Mindful of Talley's *pro se* status, we did not. Now that he is warned of the consequences of failing to file responses to motions, we may grant as uncontested future motions to which he has filed no response.

[4] The following facts are taken from the detailed complaint. For the purposes of this motion, they are considered as true.

[5] Compl. ¶ 26. A POC is "[a] cell located in the infirmary area of the facility that is used to hold inmates who are mentally decompensating to the point where they are considered a danger to themselves, other inmates, and/or property. These cells provide a means of re[s]training (sic) the inmate, if necessary, and allow for constant supervision of the inmate to be maintained in order to treat the inmate." *Id.* ¶ 27 (quoting DC – ADM 13.8.01, Glossary of Terms).

[6] *Id.* ¶ 29. Talley refers to Lieutenant Leonard by her first name in the complaint.

[7] *Id.* ¶ 30.

[8] *Id.* ¶¶ 30-31. Talley alleges that non-moving Defendant R. Doyle is a "psychiatric." *Id.* ¶ 17.

[9] *Id.* ¶ 31.

2

asked why he was suicidal and Talley responded that he "wanted the same treatment to which [his] Caucasian counterparts received."[10]

Leonard left and later returned, stating that Doyle had "cleared" Talley.[11] Talley continued to insist he was suicidal and swallowed more foreign objects.[12] Leonard left again and returned with an extraction team[13] Talley, after swallowing more foreign objects, allowed himself to be handcuffed and escorted to the Restrictive Housing Unit (RHU) by the extraction team.[14] Leonard turned Talley over to Lieutenant Terrance Bright, who asked Talley if he was suicidal.[15] Talley told Bright that he was suicidal and needed a medical consultation because he had swallowed several foreign bodies.[16] Bright left and returned with Psychological Services Specialist McKenzie Nash, who asked Talley why he was suicidal and how he intended to kill himself.[17] Talley responded that he feared for his life in the RHU and that he had swallowed several foreign bodies.[18] Nash walked away.[19]

Talley was placed in restraints and transferred to a camera cell in the Diversionary Treatment Unit (DTU).[20] He freed himself from the restraints and destroyed the camera.[21]

---

[10] *Id.* ¶ 32.
[11] *Id.* ¶ 33.
[12] *Id.*
[13] *Id.* ¶ 34.
[14] *Id.* ¶¶ 36-38.
[15] *Id.* ¶ 38.
[16] *Id.*
[17] *Id.* ¶ 39.
[18] *Id.*
[19] *Id.*
[20] *Id.* ¶¶ 41-42.
[21] *Id.*

Lieutenant Andrew Reber and the Unknown Extraction Team #2 placed Talley in a restraint chair.[22] Talley complained that the restraints were too tight, but Nurse Mark Sokolski only tightened them.[23] Talley remained in the chair for approximately seven and a half hours and was provided exercise breaks at two-hour intervals.[24]

After Talley was released from the chair, he began a hunger strike.[25] Twenty-four hours later he was taken to medical triage where he spoke to RN Chris and RN Crystal about his mental health.[26] RN Chris contacted the on-call psychiatrist and "convinced" him or her to order Talley returned to his DTU camera cell.[27] Talley continued to vomit blood during this period from the foreign objects he had swallowed, until he had a bowel movement.[28]

Talley remained in the DTU camera cell from January 17 until he was transferred to another prison on January 30.[29] During this period, Ladonne and Doyle, "the only people capable of clearing [Talley] off of suicide watch," refused to evaluate him.[30] As a result, he stayed in his cell 24 hours a day without access to showers or recreation space.[31]

---

[22] *Id.* ¶ 43.
[23] *Id.* ¶ 44.
[24] *Id.* ¶¶ 46-49.
[25] *Id.* ¶ 49.
[26] *Id.* ¶ 50.
[27] *Id.* ¶¶ 50-51.
[28] *Id.* ¶ 53 & p. 10 n.7.
[29] *Id.* ¶ 56.
[30] *Id.*
[31] *Id.*

4

Talley alleges that the DOC, Wetzel, Link, Banta, Clark, Doyle and Ladonne violated the ADA, the RA and the Eighth Amendment by excluding him from showers and recreation and from mental health services.[32] He alleges that Leonard, the Unknown Extraction Team #1, Doyle, Ladonne, RN Crystal, RN Chris, Nash and Bright violated the Eighth Amendment by denying him medical and/or mental health treatment.[33] He alleges that Link, Banta, Clark, Wetzel, Doyle, Ladonne, Leonard, Bright and Unknown Extraction Teams #1 and #2 violated his Eighth and Fourteenth Amendment rights by placing him in restraints rather than providing him with mental health treatment whenever he complained he was suicidal.[34] He alleges that Sokolski violated the Eighth Amendment and committed assault and battery and medical malpractice when he tightened his restraints.[35] He alleges that Reber and the Unknown Extraction Team #2 violated the Eighth Amendment and committed assault and battery when they failed to intervene.[36] Talley seeks compensatory and punitive damages, and injunctive and declaratory relief.[37]

**Standard of Review**

Pursuant to Rule 12(b)(6), a court may dismiss all or part of an action for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). The complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

---

[32] *Id.* ¶ 25. The ADA claim is against these defendants in their official capacity only. Pl.'s Response at 2 (ECF No. 11).

[33] *Id.* ¶¶ 60-62, 64-65.

[34] *Id.* ¶¶ 65, 67.

[35] *Id.* ¶ 66.

[36] *Id.*

[37] *Id.* pp. 13-14.

(2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  The plaintiff must allege facts that indicate "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  Pleading only "facts that are 'merely consistent with' a defendant's liability" is insufficient and cannot survive a motion to dismiss.  *Id.* (quoting *Twombly*, 550 U.S. at 557).

A conclusory recitation of the elements of a cause of action is not sufficient.  *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).  The plaintiff must allege facts necessary to make out each element.  *Id.* (quoting *Twombly*, 550 U.S. at 563 n.8).  In other words, the complaint must contain facts which, if proven later, support a conclusion that the cause of action can be established.

In assessing the sufficiency of a complaint, a court must: (1) identify the elements of the causes of action; (2) disregard conclusory statements, leaving only factual allegations; and (3) assuming the truth of those factual allegations, determine whether they plausibly give rise to an entitlement to relief.  *Palakovic v. Wetzel*, 854 F.3d 209, 220 (3d Cir. 2017) (internal quotation marks and citations omitted) (quoting *Burtch v. Millberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011)).

**Analysis**

Before filing suit challenging prison life under any federal law, including the ADA and the RA, a prisoner must exhaust all available administrative remedies.  *Rinaldi v. United States*, 904 F.3d 257, 265 (3d Cir. 2018).  The PLRA provides that "[n]o action shall be brought with respect to prison conditions under [§ 1983 or any other federal law] until administrative remedies as available are exhausted."  42 U.S.C. § 1997(e)(a).  To properly exhaust, the prisoner must comply with all deadlines and procedural rules.

*Woodford v. Ngo*, 548 U.S. 81, 90 (2006). He must pursue all available steps in the process. *Id.* *See also Ross v. Blake*, 136 S. Ct. 1850, 1859-60 (2016); *Spruill v. Gillis*, 372 F.3d 218, 222 (3d Cir. 2004). If he fails to do so, his action must be dismissed. *Spruill*, 372 F.3d at 227.

The exhaustion requirement is mandatory. A court may not excuse a failure to exhaust even if there are "special circumstances." *Ross*, 136 S. Ct. at 1856. The only exception is where an administrative remedy is not available. Section 1997e(a) of the PLRA only requires the exhaustion of available remedies. Stated differently, if the administrative remedies are not available, there is nothing to exhaust.

The administrative remedies are deemed unavailable where: (1) the administrative procedure, in practice, does not afford inmates a real chance for redress because the prison administrators refuse or are unable to process the grievance; (2) the procedure is so "opaque" that inmates cannot "discern or navigate it"; and (3) the prison administrators prevent or thwart inmates from pursuing grievances through the process by "machination, misrepresentation, or intimidation." *Ross*, 136 S. Ct. at 1859-60.

The DOC maintains an official grievance process entitled the "Inmate Grievance System" and is governed by Administrative Regulation 804 (DC-ADM 804).[38] Defendants argue that Talley failed to exhaust administrative remedies because he did not take any of the steps set forth in DC-ADM 804.[39] As the Commonwealth Court has explained:

> While DOC policy DC–ADM 804 provides that claims of inmate abuse can be the subject of a grievance (DC–ADM 804 Procedures Manual § 1(B)(10)), the DOC policy governing inmate abuse, DC–ADM 001, provides that inmates are not required to use the prison grievance procedure to

---

[38] DC-ADM 804.VI.A.8.

[39] Defs.' Memo. of Law in Support of Mot. to Dism. at 6-7.

7

> report abuse, and may also proceed by other means, including notifying a staff member of the abuse. DC–ADM 001 § IV(D).

*Parran v. Rozum*, No. 239 C.D. 2012, 2013 WL 3942101, at *3 (Pa. Commw. Ct. Jan. 4, 2013) (unreported panel decision).

Talley alleges that he made an on-camera verbal complaint to prison personnel regarding the denial of mental health treatment and the use of restraints.[40] Defendants respond that "this does not relieve Plaintiff of his obligation to address his complaints through the grievance system."[41] But, they do not explain why Talley was required to proceed under DC-ADM 804 where that policy provides that "[a] grievance dealing with allegations of abuse shall be handled in accordance with Department policy DC-ADM 001, 'Inmate Abuse.'"[42] In *Parran*, the court concluded that dismissal was inappropriate at the pleadings stage where defendants failed "to discuss whether the grievance procedure is mandatory for abuse claims, in light of the language in DC–ADM 001." 2013 WL 3942101, at *3. Because Talley exhausted the administrative remedies available to him under DC-ADM 001, we find dismissal for failure to exhaust administrative remedies is unwarranted at this time.

### *ADA and RA Claims*

The ADA makes it unlawful for public entities, including prisons, to discriminate against the disabled in the provision of services, programs and activities. *Disability Rights N.J., Inc. v. Comm'r, N.J. Dep't of Human Servs.*, 796 F.3d 293, 301 (3d Cir. 2015) (citing *Tennessee v. Lane*, 541 U.S. 509, 517 (2004)); *Chisholm v. McManimon*, 275 F.3d 315,

---

[40] Compl. ¶ 44. *See also* DC-ADM 001.IV.D.1 (inmate may report abuse verbally).

[41] Defs.' Memo. of Law in Support of Mot. to Dism. at 7-8.

[42] DC-ADM 804 § 1.D.2.

325 (3d Cir. 2001) (citing *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998)). The RA prohibits discrimination by entities receiving federal funding and is interpreted similarly to the ADA. *Yeskey*, 118 F.3d at 170. To state a claim under the ADA and RA, a plaintiff must allege "that he is a 'qualified individual with a disability' [and] that he was excluded from a service, program, or activity of a public entity . . . because of his disability." *Disability Rights N.J., Inc.*, 796 F.3d at 301 (quoting 42 U.S.C. § 12102(1)(A)). Mental illness is a disability under the ADA and RA. 29 U.S.C. § 705(9)(A); 42 U.S.C. § 12102(1)(A).

Talley claims that the DOC, Wetzel, Link, Banta, Clark, Doyle and Ladonne violated the ADA and RA by placing him in restraints and later in a DTU cell without permitting him to consult with a mental health professional.[43] Yet, he alleges a number of mental health professionals interacted with him prior to his placement in restraints and a DTU cell. Ladonne observed Talley swallowing foreign objects but informed him that neither he nor Doyle would place him in the MHU.[44] After Leonard consulted Doyle about Talley's self-injurious behavior, Doyle approved Tally's transfer to the RHU.[45] Once in the RHU, Talley told Bright he was suicidal.[46] Bright then retrieved Nash to speak with Talley.[47] Nash asked Talley why he was suicidal and how he intended to kill himself.[48] She refused to move him to the MHU.[49] Talley later spoke to RN Chris and RN Crystal

---

[43] Compl. ¶ 58.

[44] *Id.* ¶ 30.

[45] *Id.* ¶ 33.

[46] *Id.* ¶ 38.

[47] *Id.* ¶ 39.

[48] *Id.*

[49] *Id.*

9

in the medical triage about his depression and suicidal ideation.[50] RN Crystal spoke with a psychiatrist who ordered Talley placed in the DTU camera cell.[51] From January 17 through 30, 2019, Talley remained on suicide watch.[52]

Talley fails to allege facts supporting his conclusion that he was excluded from mental health treatment. In effect, he alleges only he received inadequate or incompetent treatment of his suicidal threats and his swallowing of foreign objects. A denial of treatment for a disability is not actionable under the ADA and RA. *Iseley v. Beard*, 200 F. App'x 137, 142 (3d Cir. 2006) (citing *Bryant v. Madrigan*, 84 F.3d 246, 248 (7th Cir. 1996)). Nor is medical malpractice. *Bryant*, 84 F.3d at 248.

Talley also claims that these defendants violated the ADA and RA by depriving him of showers and recreation while he remained on suicide watch.[53] Showers are "part of the programs, services [and] activities" provided by a prison. *Furgess v. Pa. Dep't of Corr.*, 933 F.3d 285, 291 (3d Cir. 2019). So is recreation.[54] *Norfleet v. Walker*, 684 F.3d 688, 690 (7th Cir. 2012) (citations omitted); *DeFreitas v. Montgomery Cty. Corr. Facility*, No. 08-5330, 2012 WL 2920219, at *14 (E.D. Pa. July 18, 2012). But, a plaintiff must also allege "facts sufficient to show" that he was excluded "by reason of" his disability. *Brown v. Pa. Dep't of Corr.*, 290 F. App'x 463, 467 (3d Cir. 2008) (quoting 42 U.S.C. § 12132). *See also Brown v. Deparlos*, 492 F. App'x 211, 215 (3d Cir. 2012).

---

[50] *Id.* ¶ 49.

[51] *Id.* ¶ 50.

[52] *Id.* ¶ 56.

[53] *Id.* ¶¶ 56, 58.

[54] Defendants point to contrary authority. *See Harris v. Giroux*, No. 16-38, 2017 WL 3075099, at *9 (W.D. Pa. July 19, 2017), *disagreed with on other grounds by Furgess,* 933 F.3d at 291. We take no position on the matter.

Here, Talley alleges that he was excluded from prison activities while he was on suicide watch. According to his own allegations, he was placed in a restricted area under surveillance after he claimed he was suicidal. He does not allege facts making out a plausible claim of discrimination due to his mental health.

*Section 1983 Claims*

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). The DOC, as a state agency, is not a "person" under § 1983. *Estate of Lagano v. Bergen Cty. Prosecutor's Office*, 769 F.3d 850, 847 (3d Cir. 2014). Nor do the facts pled by Talley establish a plausible constitutional violation against any individual defendant.[55]

Eighth Amendment Claims

Talley claims that Ladonne, Doyle, Nash, Bright, Leonard, Unknown Extraction Team #1, RN Crystal and RN Chris failed to provide him with medical and mental health treatment. The Eighth Amendment protection against cruel and unusual punishment extends to a prisoner's right to treatment. *Estelle v. Gamble*, 429 U.S. 97, 102, 103 (1976) (internal citations omitted). Failure to provide adequate care violates a prisoner's right to be free from cruel and unusual punishment when it results from "deliberate indifference to a prisoner's serious illness or injury." *Id.* at 104–05.

---

[55] Construing the complaint in the light most favorable to Talley, we assume that although he sues the individual defendants in their official capacity under the ADA, he sues them in their personal capacity under § 1983. A claim for damages against state officials in their official capacity is the same as a claim against the employing entity, but officials sued in their personal capacity are "persons" under § 1983. *Hafer v. Melo*, 502 U.S. 21, 22-23, 25, 27 (1991).

11

To state an Eighth Amendment claim arising out of the failure to treat, Talley must plead sufficient facts that, if proven, would establish two elements: (1) he had a serious medical need; and (2) prison officials were deliberately indifferent to that need. *Spruill*, 372 F.3d at 235-36.

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). *See also Atkinson v. Taylor,* 316 F.3d 257, 272-73 (3d Cir. 2003). A medical condition is serious when the denial or delay of medical treatment causes "unnecessary or wanton infliction of pain." *Monmouth Cty.*, 834 F.3d at 347.

Deliberate indifference to a serious medical need is shown when: (1) a doctor intentionally inflicts pain on a prisoner; (2) a prison official denies reasonable requests for medical treatment, exposing the inmate to undue suffering or the threat of tangible residual injury; or (3) an official intentionally refuses to provide care even though he is aware of the need for such care. *Spruill*, 372 F.3d at 235. A prison official is deliberately indifferent if he disregards a known excessive risk to the inmate's health and safety. It is not enough that the official is aware of facts from which an inference can be drawn that the inmate is exposed to a substantial risk of serious harm. The official must actually draw that inference. *Farmer v. Brennan*, 511 U.S. 825, 837-38 (1994).

Talley claims that Ladonne, Leonard, Unknown Extraction Team #1, RN Crystal and RN Chris were deliberately indifferent when they failed to provide him with medical care after he swallowed foreign objects.[56] Talley did not vomit blood until at least eight

---

[56] Compl. ¶¶ 60-61, 64.

and a half hours after swallowing foreign objects in front of Ladonne, Leonard and Unknown Extraction Team #1.[57] Once he began exhibiting these symptoms, he was taken to medical triage where he was seen by RN Crystal and RN Chris within 24 hours.[58]

Talley fails to allege deliberate indifference. He was seen by medical professionals within a reasonable time after exhibiting symptoms apparently related to the ingestion of the foreign objects. He does not allege what medical care was withheld from him. His symptoms ceased within 48 hours.

Talley also claims that Ladonne, Doyle, Bright and Nash were deliberately indifferent when they failed to provide him with mental health treatment.[59] Ladonne met with Talley but concluded that commitment to the MHU was unwarranted.[60] Doyle reached the same conclusion based upon his discussion with Leonard.[61] Bright, who is not a medical or mental health professional, retrieved Nash after Talley stated he was suicidal.[62] After talking with Talley, Nash concluded he need not be transferred to the MHU.[63]

At most, Talley alleges medical malpractice or a disagreement over his treatment. He believes that he should have remained in the POC or been examined by a mental health professional prior to his transfer to the DTU cell. Instead, he was placed in a restraint and later transferred to the DTU cell, another camera cell.

---

[57] *Id.* ¶¶ 30, 32, 36, 43, 46, 48, 53.

[58] *Id.* ¶¶ 49, 53.

[59] *Id.* ¶¶ 61-62, 65.

[60] *Id.* ¶¶ 30-31.

[61] *Id.* ¶ 33.

[62] *Id.* ¶ 38.

[63] *Id.* ¶ 39.

13

Medical malpractice does not amount to a constitutional violation. *Estelle*, 429 U.S. at 105-06; *Monmouth Cty.*, 834 F. 2d at 347. Likewise, disagreement as to proper medical treatment does not establish an Eighth Amendment violation. *Spruill*, 372 F.3d at 235-36.

The allegations in his complaint demonstrate that the defendants were not deliberately indifferent to Talley's suicidal ideation and self-injurious behavior. Rather, they chose to handle it in a manner other than what he preferred.

Talley claims that Link, Banta, Clark and Sokolski's use of restraints, and Reber and Unknown Extraction Team #2's failure to intervene, violated his Eighth Amendment rights.[64] We analyze Talley's claim as alleging both excessive force and unconstitutional conditions of his confinement. *Fuentes v. Wagner*, 206 F.3d 335, 345 (3d Cir. 2000) (analyzing challenge to use of restraint chair under both standards).

Where a prisoner alleges excessive force, "the subjective inquiry is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id.* (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). The inmate's injury must be objectively more than *de minimis*. *Id.* (citing *Hudson*, 503 U.S. at 9-10). Where a prisoner challenges the conditions of his confinement, we apply a deliberate indifference standard. *Id.* (citing *Farmer*, 511 U.S. at 837). The inmate must have been objectively "denied the minimal civilized measure of life's necessities.'" *Id.* (quoting *Hudson*, 503 U.S. at 9).

Talley was initially placed in body restraints in a camera cell after he swallowed

---

[64] *Id.* ¶¶ 63, 66.

foreign objects and stated he was suicidal.[65] He freed himself from those restraints within two hours, climbed the wall of his cell, and destroyed the camera there.[66] Only then was he placed in a more restrictive restraint chair.[67] Talley complains that the restraint chair was too tight and made tighter after he complained.[68] However, he had already escaped one set of restraints and he alleges no resulting injury. He spent only two hours in the chair before he was allowed to exercise, and he does not allege that it was overly tightened again when he was placed back into it.[69] Talley was let out of the chair again for exercise two and four hours later.[70] While out the third time, he screamed he was suicidal.[71] He was then placed back in the chair.[72] Talley was let out permanently 90 minutes later, having spent seven and a half hours in the chair.[73]

Talley fails to allege constitutionally violative use of force or conditions of confinement. The use of restraints for a relatively short amount of time and for a legitimate purpose does not establish an Eighth Amendment violation. *Diaz v. Dir. Fed. Bur. of Prisons*, 716 F. App'x 98, 101 (3d Cir. 2017) (use of four-point restraints for 24 hours and ambulatory restraints for 20 hours did not violate Eighth Amendment); *Abdullah v. Seba*, 658 F. App'x 83, 85 (3d Cir. 2016) (use of ambulatory restraints for 24 hours did not violate Eighth Amendment). Inmate safety is a legitimate purpose.

---

[65] *Id.* ¶¶ 40-41.

[66] *Id.* ¶ 43.

[67] *Id.* ¶ 44.

[68] *Id.*

[69] *Id.* at ¶ 46.

[70] *Id.*

[71] *Id.*

[72] *Id.*

[73] *Id.* ¶ 48.

15

The defendants did not act with deliberate indifference to Talley's health in employing restraints. He was allowed to exercise every two hours and alleges no injury beyond the *de minimis* discomfort he experienced when Sokolski, a nurse, initially tightened the chair more than he preferred.[74] *See Banks v. Mozingo*, 423 F. App'x 123, 127 (3d Cir. 2011) (no excessive force claim based on tight restraints where nurse checked to ensure that they were not causing serious injury). Nor does Talley allege that the defendants acted with deliberate indifference by denying him any "of life's necessities." *See Fuentes*, 206 F.3d at 345.

Talley also brings a conditions of confinement claim based upon his lack of access to showers and recreation for the 13 days he spent on suicide watch.[75] The denial of shower and recreation facilities for a few weeks or even months does not establish an Eighth Amendment violation. *Id.* (28-day denial of showers and out-of-cell exercise not unconstitutional). *See also Pearson v. Ramos*, 237 F.3d 881, 884 (7th Cir. 2001) ("We think it a reasonable rule that a denial of yard privileges for no more than 90 days at a stretch is not cruel and unusual punishment."); *Knight v. Armontrout*, 878 F.2d 1093, 1096

---

[74] Talley alleges that Sokolski's tightening of the restraint chair and Reber and Extraction Team #2's failure to intervene also constitutes assault and battery by these defendants and medical malpractice by Sokolski. *Id.* ¶ 66. An assault is an act that intentionally causes another imminent apprehension of harmful bodily contact. *Sides v. Cleland*, 648 A.2d 793, 796 (Pa. Super. 1994). A battery is harmful or offensive contact with another person. *C.C.H. v. Phila. Phillies, Inc.*, 940 A.2d 336, 340 n.4 (Pa. 2008). The elements of medical malpractice are the same as negligence: (1) a duty owed by the medical provider to the patient; (2) a breach of that duty; (3) proximate causation; and (4) resulting harm. *Tillery v. Children's Hosp. of Phila.*, 156 A.3d 1233, 1240 (Pa. 2017).

Talley alleges that Sokolski "intentionally" tightened the restraint chair "with the intent" of causing him pain, but these are mere legal conclusions. He does not allege facts in support of his claims. The *de minimis* use of force applied by Sokolski in ensuring that Talley, who had already escaped from one set of restraints, was securely fastened in the chair does not constitute assault and battery or medical malpractice. Talley suffered no resulting harm and sought no treatment relating to his brief time in the tight restraint chair. Nor has he filed a certificate of merit in support of his medical malpractice claim as required by Pennsylvania Rule of Civil Procedure 1042.3(a).

[75] Compl. ¶ 59 & p. 10 n.7.

(8th Cir. 1989) (13-day denial of out-of-cell exercise not unconstitutional). While on suicide watch, Talley was under constant surveillance. He could not be placed alone and unsupervised in a shower.

Talley does not plead any negative health effects resulting from the denial of a shower and recreation. *See French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985) (denial of exercise may violate Constitution where "muscles are allowed to atrophy"). Nor does he allege he could not clean himself or exercise in the DTU cell.[76]

### Fourteenth Amendment Claims

Talley alleges that Link, Banta, Clark, Doyle, Ladonne, Leonard, Bright, Reber and Unknown Extraction Teams #1 and #2 violated the Fourteenth Amendment's Due Process and Equal Protection Clauses by placing him in restraints when he complained he was suicidal rather than providing him with mental health treatment.[77]

The due process analysis starts with determining whether the liberty interest asserted is one that is protected by the Fourteenth Amendment. *Montanez v. Sec'y Dep't of Corr.*, 773 F.3d 472, 482-83 (3d Cir. 2014) (quoting *Evans v. Sec'y Pa. Dep't of Corr.*, 645 F.3d 650, 663 (3d Cir. 2011)). If it is a protected interest, we must then determine what process is necessary to protect it. *Newman v. Beard,* 617 F.3d 775, 783 (3d Cir. 2010) (citation omitted). If the interest is not protected, no process is necessary. Thus, at the threshold, the plaintiff must establish that he had a protected liberty interest that triggered due process rights. *See Fraise v. Terhune*, 283 F.3d 506, 522 (3d Cir. 2002)

---

[76] Talley also brings an Eighth Amendment claim against Wetzel for his "willful blindness" to the violation of Talley's constitutional rights. Because we find no violation, Talley fails to state a claim against Wetzel as well.

[77] Compl. ¶¶ 68-69.

17

(finding that succeeding on a due process claim requires demonstrating that the plaintiff was deprived of a liberty interest).

Prisoners do not enjoy the same liberty interests as other citizens do. *See Sandin v. Conner*, 515 U.S. 472, 485 (1995). Incarceration "brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Id.* (quoting *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125 (1977)). "To rise to the level of a liberty interest, the right alleged must confer 'freedom from restraint which . . . imposes *atypical and significant hardship* on the inmate in relation to the ordinary incidents of prison life.'" *Williams v. Sec'y Pa. Dep't of Corr.*, 848 F.3d 549, 559 (3d Cir. 2017) (quoting *Griffin v. Vaughn*, 112 F.3d 703, 708 (3d Cir. 1997)) (emphasis in *Griffin*). "As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Montayne v. Haymes*, 427 U.S. 236, 242 (1976).

Talley was placed in body restraints after he swallowed foreign objects and claimed he was suicidal.[78] He escaped from those restraints in one to two hours and destroyed the camera in the cell.[79] He was then placed in a restraint chair where he spent the next seven and a half hours, except when he was let out every two hours for exercise.[80]

---

[78] *Id.* ¶¶ 40-41.

[79] *Id.* ¶ 43.

[80] *Id.* ¶¶ 44, 46.

Placement in restraints for a short period of time is not an atypical and significant hardship for a prisoner. Courts have repeatedly held that placement in restraints for similar or longer periods does not implicate a liberty interest. *See Key v. McKinney*, 176 F.3d 1083, 1085, 1087 (8th Cir. 1999) (affirming dismissal of procedural due process claim where prisoner was placed in handcuffs chained to leg shackles for 24 hours); *Williams v. Burton*, 943 F.2d 1572, 1574, 1576-77 (11th Cir. 1991) (no procedural due process claim where prisoner was placed in four-point restraints and his mouth taped shut for 28.5 hours), *cert. denied*, 505 U.S. 1208 (1992); *Shand v. Chapdelaine*, No. 17-1947, 2018 WL 279980, at *2-4 (D. Conn. Jan. 3, 2018) (dismissing procedural due process claim where prisoner placed in "handcuffs, leg irons, and a tether chain connecting his hands to his legs" for three days); *Grady v. Holmes*, No. 406-123, 2007 WL 2507395, at *3 (S.D. Ga. Aug. 30, 2007) (placement in restraint chair for 44 hours did not constitute procedural due process violation).

Talley also claims that his placement in restraints violated the Equal Protection Clause. To sustain a § 1983 claim for denial of equal protection under the Fourteenth Amendment, Talley must allege that he received different treatment from that received by other individuals similarly situated. *Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd of Educ.*, 587 F.3d 176, 196 (3d Cir. 2009). He must demonstrate there was purposeful discrimination. *Id.*

Talley alleges that he was deprived of equal protection because "no other prisoner in the entire DOC" was placed in restraints when he or she requested mental health treatment.[81] This conclusory statement is insufficient. Talley has not alleged any facts

---

[81] *Id.* ¶ 35.

tending to show he was treated differently than any other inmates. Talley was placed in restraints, for a limited amount of time and with regular exercise breaks, to prevent him from harming himself. He does not allege facts supporting purposeful discrimination. Hence, he fails to state a claim for violation of the Fourteenth Amendment.[82]

*Injunctive Relief Claim*

Talley seeks an injunction compelling the DOC to make unspecified "adjustments" to and post its policy regarding which personnel may order inmates placed in restraints and when they may do so.[83] But, Talley has failed to state any claims based upon defendants' use of restraints. He is not entitled to the requested injunction.

**Conclusion**

Because Talley fails to state any plausible claims for relief, his complaint is dismissed with prejudice in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6) and 28 U.S.C. § 1915(e)(2)(B)(ii). Any attempt to amend his complaint would be futile.[84]

---

[82] Talley also describes his Fourteenth Amendment claim as asserting state law "extortion and/or coercion" and federal and state conspiracy. *Id.* ¶¶ 68-70. Pennsylvania law does not recognize extortion or coercion as a cause of action. *Rader v. ING Groep NV*, 497 F. App'x 171, 175 (3d Cir. 2012); *Benigno v. Flatley*, No. 01-CV-2158, 2001 WL 1132211, at *1 (E.D. Pa. Sept. 13, 2001). To state a claim for conspiracy under § 1983, a plaintiff must allege, *inter alia*, that the conspirators deprived him of a constitutional or federally protected right. *Lazaridis v. Wehmer*, 591 F.3d 666, 672 (3d Cir. 2010). Conspiracy under Pennsylvania law requires a shared purpose "to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose . . . ." *Phillips v. Selig*, 959 A.2d 420, 437 (Pa. Super. 2008). Because Talley fails to plead an underlying deprivation of his rights, or unlawful act, means or purpose, his conspiracy claim fails. *See Lazardis*, 591 F.3d at 672; *Phillips*, 959 A.2d at 437.

[83] Compl. ¶ 71. Although "[a]n inmate's transfer from the facility complained of generally moots the equitable . . . claims," the DOC retains authority over Talley at his new location at SCI Fayette. *Id.* ¶ 2; *Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003).

[84] Tally's complaint goes far beyond notice pleading. It sets forth exceptional detail that provides a complete picture of what happened on January 16 and 17, 2018. There are no additional facts necessary to access the plausibility of any claim.